IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DODD HYER, et al., | MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT |
| Plaintiffs, | |
| vs. | |
| MATTHEW MALOUF, et al., | Case No. 2:07-CV-249 TC |
| Defendants. | |

This matter is before the court on Defendants' Motion to Dismiss Amended Complaint.

Defendants seek dismissal of Plaintiffs' claims under § 12(a)(2) of the Securities Act of 1933, §

10(b) of the Securities Exchange Act of 1934, and the securities laws of Utah and Nevada.

Defendants also ask the court to dismiss Plaintiffs' claims for breach of contract relating to an

investment workout agreement.  After carefully reviewing the parties' submissions and having

heard oral argument, the court will grant in part and deny in part Defendants' Motion to Dismiss

as outlined below.

I. BACKGROUND

Plaintiffs Dodd Hyer, Hyer Asset Protections Trust, D.Z. Hyer Investments, LLC and Mas Alto, L.L.C. brought this action against Defendants Matthew Malouf, National Contract Servicing, River Ridge of North Carolina, Pensacola Holdings, LLC, Perdido Village, LLC, Mark Malouf, Dale Ockey and Evolution Funding Group, LLC, alleging 28 causes of action including breach of contract, fraud, violations of securities laws, conversion, unjust enrichment, and civil RICO.  The court granted a motion to dismiss filed by Defendants, dismissing the RICO claim and portions of the securities claims with prejudice.  The court then granted Plaintiffs leave to amend their Complaint.

Plaintiffs filed an Amended Complaint on March 27, 2008, alleging the following 23 causes of action: (1) breach of contract—Claims 1, 9, 7, 22 and 23; (2) fraud—Claims 2, 10 and 18; (3) § 12(a)(2) of the Securities Act of 1933—Claims 3 and 11; (4) § 10(b) of the Securities Exchange Act of 1934—Claims 4 and 12; (5) Utah Securities Act—Claims 5 and 13; (6) Nevada Securities Act—Claims 6 and 14; (7) conversion—Claims 7, 15 and 19; (8) unjust enrichment—Claims 8, 16 and 20; and (9) injunctive relief—Claim 21.  The Amended Complaint also named a new Defendant: Pent-M, L.L.C.  Defendants then filed the Motion to Dismiss currently before the court.

In their Amended Complaint, Plaintiffs allege Defendant Matt Malouf solicited funds from Plaintiffs for investment in three real estate development projects: (1) River Ridge—a condominium development near Banner-Elk, North Carolina; (2) West Indies Village—a condominium development in Pensacola, Florida; and (3) Isle de Mer—a condominium

development also in Pensacola, Florida.  Plaintiffs allege that these solicitations were accomplished through both oral and written communications.  According to Plaintiffs, Defendants primarily used documents called "Project Offerings"—one for each of the three developments—to outline the merits of the investments.

Plaintiffs initially invested approximately $2.2 million in the development projects by purchasing ownership interests (the "Ownership Interests") in the companies developing them—Defendant River Ridge of North Carolina (River Ridge), Defendant Perdido Village, L.L.C. (West Indies Village), and Defendant Pensacola Holdings, L.L.C. (Isle de Mer).  Mr. Malouf transmitted subscription agreements purporting to convey the Ownership Interests to Plaintiffs.  Plaintiff Mas Alto executed the subscription agreements, returned them to Defendants and wired its portion of the investment funds to Defendants.  But Plaintiff Hyer Asset Protection Trust refused to execute the subscription agreements because there wasn't a return of capital agreement.  Nonetheless, upon Mr. Malouf's representation that the projects were in need of emergency funds because of "urgent circumstances,"[1] and after Mr. Malouf promised to change the subscription agreements, Hyer Asset Protection Trust wired its portion of the investment funds to Defendants.  Plaintiffs also allege that they made a further investment in the River Ridge project in the form of a $926,515.03 loan.

Plaintiffs allege that the Ownership Interests were never conveyed, that the development projects were never constructed and that the proceeds from their investments were distributed to other investors.  In the Amended Complaint, Plaintiffs outline a number of untrue statements and

---

[1]Am. Compl. ¶ 32 (Docket No. 39).

omissions allegedly made by Mr. Malouf in the course of soliciting the investment funds from

Plaintiffs.  These statements are the basis of Plaintiffs' claims under § 12(a)(2) and § 10(b).

In an attempt to resolve their differences, the parties entered into an Investment Workout

Agreement in January 2007.  As part of the Investment Workout Agreement, Defendants

promised to convey a 22.1% interest in a company called Flatrock, which was represented to be a

profitable real estate development in Texas.  Plaintiffs promised that upon receipt of the Flatrock

interest and execution of the Investment Workout Agreement, they would release all claims

resulting from the River Ridge, West Indies Village, and Isle de Mer developments.  Plaintiffs

allege that Defendants breached the Investment Workout Agreement by failing to convey the

Flatrock interest.

## II.  STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), "[a]ll well-pleaded factual

allegations, as distinguished from conclusory allegations, must be taken as true" and viewed in

the light most favorable to the nonmoving party.[2]  A plaintiff must provide "enough facts to state

a claim to relief that is plausible on its face."[3]  In other words, "the complaint must give the court

reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for

---

[2]*Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) (quoting *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984)); *see also Tellabs, Inc. v. Makor Issuers & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007) (courts considering Rule 12(b)(6) motion to dismiss § 10(b) action must also "accept all factual allegations in the complaint as true").

[3]*Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1974 (2007) (dismissing complaint where the plaintiffs "have not nudged their claims across the line from conceivable to plausible").

4

*these* claims."[4]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential

evidence that the parties might present at trial, but to assess whether the plaintiff's complaint

alone is legally sufficient to state a claim for which relief may be granted."[5]

### III.  DISCUSSION

Defendants move to dismiss Plaintiffs' claims for relief under § 12(a)(2) of the Securities

Act of 1933, § 10(b) of the Securities Exchange Act of 1934, and comparable Utah and Nevada

securities laws.  They also ask the court to dismiss Plaintiffs' claims for breach of the Investment

Workout Agreement.

### A.  1933 Act Claims

In Claims 3 and 11 of their Amended Complaint, Plaintiffs allege that the Defendants

Matt Malouf, NCS, River Ridge, Pensacola Holdings and Perdido Village violated § 12(a)(2)[6] of

the Securities Act of 1933 by making false statements and material omissions of fact in

prospectuses and in oral communications in connection with Plaintiffs' purchase of the

Ownership Interests and the River Ridge loan.  Defendants argue that the Amended Complaint

fails to state a claim for relief under § 12(a)(2) because it does not allege a public offering.

Section 12(a)(2) provides a cause of action to a purchaser of a security against one who

offers or sells a security "by means of a prospectus or oral communication" that includes an

---

[4]*Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[5]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[6]15 U.S.C. § 77l(a)(2).

untrue statement or omission of material fact.  In *Gustafson v. Alloyd Company, Inc.*,[7] the

Supreme Court held that the phrase "by means of a prospectus" limits the reach of §12(a)(2) to

public offerings.[8]  Specifically, the Court held that the term "prospectus," as found in §§ 10 and

12 of the 1933 Act, "is confined to a document that, absent an overriding exemption, must

include the 'information contained in the registration statement.'"[9]  Since only public offerings

by an issuer of a security, or by a controlling shareholder, require the filing of registration

statements, the Court concluded that "prospectus" under §§ 10 and 12 "is confined to documents

related to public offerings by an issuer or its controlling shareholder."[10]  Accordingly, because

there is "no 'obligation' to distribute a document that describes a public offering to a private

purchaser," § 12(a)(2) does not apply to private offerings of securities.[11]

Whether an offering is public or private "turn[s] on whether the particular class of

persons affected needs the protection of the 1933 Act.  An offering to those who are shown to be

able to fend for themselves is a transaction 'not involving any public offering.'"[12]  The following

factors are considered in making this determination: "(1) the number of offerees; (2) the

sophistication of the offerees; (3) the size and manner of the offering; and (4) the relationship of

---

[7]513 U.S. 561 (1995).

[8]*Id.* at 584.

[9]*Id.* at 569.

[10]*Id.*

[11]*Yung v. Lee*, 432 F.3d 142, 149 (2d Cir. 2005).

[12]*SEC v. Murphy*, 626 F.2d 633, 644 (10th Cir. 1980) (quoting *SEC v. Ralston Purina Co.*, 345 U.S. 119, 125 (1953)).

the offerees to the issuer."[13]  Notably, "[a] court may only conclude that the investors do not need

the protection of the [1933 Act] if *all* the offerees have relationships with the issuer affording

them access to or disclosure of the sort of information about the issuer that registration reveals."[14]

Plaintiffs allege that Mr. Malouf offered the alleged securities through the Project

Offerings, which, according to Plaintiffs, constitute "written prospectuses."  Plaintiffs further

allege that the offers were "made in connection with a public offering of securities," and were

made "to the general public."[15]  Most important, Plaintiffs list twenty-one individuals and entities

"known to Plaintiffs who received and/or accepted the offer (or a substantially similar offer)."[16]

As noted above, the public offering analysis is fact-intensive and requires extensive inquiry

regarding each of the investors to whom the securities were offered or sold and their relationship

with the offeror.  Discovery is necessary to determine whether each of these offerees had access

to the type of information in a registration statement would reveal that they did not need the

protection of the 1933 Act.

Accordingly, the court finds that Plaintiffs have stated a claim for relief under § 12(a)(2)

that is plausible on its face and denies the Motion to Dismiss Claims 3 and 11.

---

[13]*Id.* at 644-45 (citations omitted); *see also Kunz v. SEC*, 64 Fed. Appx. 659, 667 (10th Cir. 2003) (applying factors outlined in *Murphy*) (unpublished decision).

[14]*Murphy*, 626 F.2d at 647 (emphasis added).

[15]Am. Compl. ¶ 19 (Docket No. 39).

[16]*Id.*

For these same reasons, the court will also deny the Motion to Dismiss Claims 5, 6, 13, and 14 to the extent Plaintiffs allege that Defendants sold unregistered securities in violation of Utah and Nevada law.

B. *1934 Act Claims*

In Claims 4 and 12 of their Amended Complaint, Plaintiffs allege that Defendants committed securities fraud in violation of § 10(b)[17] of the Securities Exchange Act of 1934 and Rule 10b-5.[18]  Defendants argue that the Amended Complaint fails to properly plead the falsity and scienter elements of a Rule 10b-5 claim.

To state a claim for relief under Rule 10b-5, a plaintiff must allege the following: "(1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, either with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance."[19]

Claims of securities fraud under Rule 10b-5 are subject to the heightened pleading requirements set forth in the Private Securities Litigation Reform Act of 1995 (PSLRA).  The PSLRA did not add to the above list of elements, but stiffened the pleading requirements for two

---

[17]15 U.S.C. § 78j(b).

[18]17 C.F.R. § 240.10b-5.

[19]*Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003).

of those elements beyond what was previously required under Federal Rule of Civil Procedure

9(b):  the false statement element and the scienter element.[20]

In their Amended Complaint, Plaintiffs allege 19 untrue statements[21] and 2 omissions.

Defendants contend that Plaintiffs have not properly pleaded the falsity and scienter elements in

many of these statements.[22]

1.  False Statements or Omissions of Material Fact

The PSLRA requires that

[i]n any private action arising under this chapter in which the plaintiff alleges that
the defendant—

(A) made an untrue statement of material fact; or

(B) omitted to state a material fact necessary in order to make the
statements made, in the light of the circumstances in which they were
made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the
reason or reasons why the statement is misleading, and if an allegation regarding
the statement or omission is made on information and belief, the complaint shall
state with particularity all facts on which that belief is formed.[23]

An allegation is made on information and belief "when it is not based on the firsthand

knowledge of the person making the allegation . . . but that person nevertheless, in good faith,

---

[20]*Id.*

[21]Paragraphs 23k and 38b allege the same misrepresentation.

[22]Defendants have not challenged the alleged misleading statements and omissions found
in Paragraphs 23g, 25a, 25b, 38c, 38d, and 38e.

[23]15 U.S.C. § 78u-4(b)(1).

believes the allegation to be true."[24]  For Rule 10b-5 claims, a court treats allegations based on

investigation of counsel as allegations based on information and belief.[25]

Where a Rule 10b-5 plaintiff makes an allegation of a false statement or material

omission based on information and belief, the obligation to "state with particularity all facts on

which that belief is formed" does not ordinarily require the plaintiff to actually list all of the facts

upon which the plaintiff's belief is based.[26]  Rather, a court must evaluate "the facts alleged in

[the] complaint to determine whether, taken as a whole, they support a reasonable belief that the

defendant's statements identified by the plaintiff were false or misleading."[27]  This requires a

court to consider the following factors: "(1) the level of detail provided by the facts stated in a

complaint; (2) the number of facts provided; (3) the coherence and plausibility of the facts when

considered together; (4) whether the source of the plaintiff's knowledge about a fact is disclosed;

(5) the reliability of the sources from which the facts were obtained; and (6) any other indicia of

how strongly the facts support the conclusion that a reasonable person would believe that the

defendant's statements were misleading."[28]  The plaintiff is not required to reveal the source of

the information upon which its belief is based.[29]  But if the plaintiff does not identify the source,

---

[24]*Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Black's Law Dictionary* 779 (6th ed. 1990)) (internal quotation marks omitted).

[25]*Adams*, 340 F.3d at 1098.

[26]*Id.* at 1098-99.

[27]*Id.* at 1099.

[28]*Id.*

[29]*Id.* at 1101-03.

"the facts alleged in an information and belief complaint will usually have to be particularly detailed, numerous, plausible, or objectively verifiable by the defendant before they will support a reasonable belief that the defendant's statements were false or misleading."[30]

Because Defendants here challenge the materiality of the statements and omissions alleged in the Amended Complaint, a brief discussion of the legal standard for materiality is warranted.  "A statement or omission is only material if a reasonable investor would consider it important in determining whether to buy or sell stock."[31]  Additionally, the statement or omission must have "significantly altered the total mix of information available."[32]  "Vague statements of 'corporate optimism'" or "mere puffing" are generally immaterial "because reasonable investors do not rely on them in making investment decisions."[33]  These "are typically forward-looking statements, or are generalized statements of optimism that are not capable of objective verification."[34]  However, statements that "could have, and should have had, some basis in objective and verifiable fact" cannot be dismissed as merely corporate optimism.[35]

---

[30]*Id.* at 1103.

[31]*Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997) (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)).

[32]*Id.* (quoting *TSC Indus.*, 426 U.S. at 449).

[33]*Id.*

[34]*Id.*

[35]*Id.* at 1123.

The court will analyze each of the alleged false statements and omissions challenged by Defendants within this framework.

Paragraph 23a: Mr. Malouf had authority to convey the Ownership Interests and would convey those interests to Plaintiffs. Plaintiffs have not properly alleged that this statement was false or misleading. Plaintiffs allege only that the Ownership Interests were never conveyed and that Mr. Malouf has never produced any evidence that he had authority to do so, despite Plaintiffs requests for such evidence. As Plaintiffs have not alleged personal knowledge regarding Mr. Malouf's authority, this allegation is based on information and belief.

That the Ownership Interests were never conveyed, without more, cannot support a reasonable belief that Mr. Malouf had neither the authority nor the intention to convey the Ownership Interests to Plaintiffs. Defendants' failure to comply with Plaintiffs' request for information is likewise unhelpful. Accordingly, the court cannot infer that the statement found in Paragraph 23a is false without violating the PSLRA information and belief pleading standards.

Paragraph 23b: River Ridge Company owned and was developing the River Ridge property. Plaintiffs have properly alleged that this statement was false or misleading. Plaintiffs allege that the River Ridge Company was voluntarily dissolved on December 12, 2004, that the City of Banner Elk had not issued construction approvals, and that no utilities were available to the River Ridge project. These allegations sufficiently explain why the statement in Paragraph 23b was false. Defendants do not challenge this statement's materiality.

Paragraph 23c: Pensacola holdings owned the Isle de Mer property. Plaintiffs allege that they learned through independent research that the Isle de Mer property was actually owned by

Gulf Development, LLP.  Plaintiffs further allege that Mr. Malouf confirmed this finding in a

meeting in September 2006.  Defendants challenge only the materiality of this alleged false

statement, claiming that a mortgage note included in the project offerings, which was reviewed

by Plaintiffs, shows that Gulf Development, LLP was the true owner of the property.

Plaintiffs have sufficiently alleged that the untrue statement in ¶ 23c was material.

Although Defendants have shown that other information was available to Plaintiff regarding the

ownership of the Isle de Mer property, whether the statement in Paragraph 23c significantly

altered the total mix of information is not properly resolved on a motion to dismiss under Rule

12(b)(6).  Rather, the inferences to be drawn from these allegations are "peculiarly ones for the

trier of fact."[36]

Paragraph 23d: The proceeds of Plaintiffs' investments would be applied to the three

development projects.  Plaintiffs have properly alleged that this statement was false or materially

misleading.  Plaintiffs allege that they "never received any interest in the Three Developments

and no progress was made on construction of any of the Plaintiffs' investments."[37] They also

allege that "Phil Zobrist, and other investors with ties to [Mr.] Malouf, were paid substantial

amounts of money by [Mr.] Malouf shortly after [Mr.] Malouf received the funds."[38]  Although

Plaintiffs do not list their source for this information, the facts alleged are sufficiently plausible,

---

[36]*TSC*, 426 U.S. at 450.

[37]Am. Compl. ¶ 24d (Docket No. 39).

[38]*Id.*

and objectively verifiable—at least regarding Mr. Zobrist—to support a reasonable belief that the alleged statement was indeed false.

These allegations also properly plead materiality. A reasonable investor would surely find it important to know how the proceeds of the investment would be used. Defendants argue that this statement did not significantly alter the total mix of information available, pointing to the subscription agreements which indicate that the investment proceeds would be used to reduce Defendant NCS's capital account. But at most this shows that Mr. Malouf made directly contradictory statements. Plaintiffs have properly pleaded a materially false or misleading statement in Paragraph 23(d).

Paragraph 23e: All units in the three developments were pre-sold. Plaintiffs have properly alleged that this statement was false concerning the River Ridge Project. Plaintiffs allege that in September 2006, they "learned from the marketing company listed in the River Ridge project offering that the River Ridge project had never been pre-sold."[39] Although Plaintiffs do not identify the name of the person with whom they spoke, they do identify the source of the information—the marketing company listed in the River Ridge project offering. This objectively verifiable source and information is sufficient to support a reasonable belief that the pre-sold representation was false concerning the River Ridge project. Moreover, this statement is material because a reasonable investor would certainly consider it important to know the certainty of the projected revenue stream of the investment.

---

[39]Am. Compl. ¶ 24e (Docket No. 39).

Plaintiffs have offered no allegations to support their claim that the pre-sold representation was false for the Isle de Mer and West Indies Village projects.  Rather, Plaintiffs merely allege that the Isle de Mer and West Indies projects were never pre-sold "based on the complete lack of progress with respect to those projects and the complete lack of documentation concerning any prospective owners of any condominium units in the projects."[40]  This does not satisfy the PSLRA pleading standards.

Paragraph 23f: All entitlements, permits, engineering and architectural work, and government approvals necessary for the developments were completed.  Plaintiffs properly plead a false or misleading statement in Paragraph 23f, but only for the River Ridge project.  Plaintiffs allege they were informed by the City Planner of Banner Elk that the River Ridge project was never approved by Banner Elk, no permits had ever been issued and no utilities were available to the project.  These objectively verifiable allegations, which indicate the underlying source of information, support a reasonable belief that the statement in Paragraph 23f was false concerning the River Ridge Project.  Defendants do not challenge the statement's materiality.

But Plaintiffs' allegations regarding the falsity of the statements found in Paragraph 23f fail as far as the Isle de Mer and West Indies Village projects.  Plaintiffs merely allege that they "have never been shown any evidence that any entitlements, permits, or other necessary approvals for the completion of the Isle de Mer or West Indies Village [projects] were ever obtained."[41]  These conclusory allegations do not meet the pleading standards of the PSLRA.

---

[40] *Id.*

[41] *Id.* at ¶ 24f.

Paragraph 23k: The value of the River Ridge development was $7 million.  Plaintiffs have properly alleged that the statement in Paragraph 23k regarding the value of the River Ridge project was false or misleading.  Plaintiffs allege that in late August 2006, Mr. Malouf "admitted to Plaintiffs that the current value of the River Ridge project was approximately $2 million not $7 million."[42]   The fact that the August 2006 value of the project was lower than the amount represented by Mr. Malouf in April 2005 does not inevitably lead to the conclusion that Mr. Malouf's April 2005 valuation was false.  But where the amounts are so drastically different, the allegation that Mr. Malouf "admitted" the value of the River Ridge project was only $2 million—approximately 28% of the amount represented by Mr. Malouf the previous year—is enough to support a reasonable belief that the statement in Paragraph 23k was false or misleading.

Certainly, because a reasonable investor would find the value of the development important to the investment decision, the false valuation of the River Ridge property was also material.  Accordingly, Plaintiffs have alleged a materially false or misleading statement in Paragraph 23k.

Paragraphs 23l, 23m, and 23n: The value of the Isle de Mer project was $6.5 million; the Isle de Mer project was subject to $2.1 million in debt; and the West Indies Village project was subject to $5.5 million in debt.  Plaintiffs have not properly alleged that these statements were false or misleading.  Plaintiffs allege that in September 2006, Mr. Malouf admitted to them that the current value of the Isle de Mer project was $4 million and that the project was subject to

---

[42]*Id.* at ¶ 24k.

debt in the amount of $2.5 million.  Plaintiffs also allege that in the September 2006 meeting,

Mr. Malouf admitted that the West Indies Village project was subject to a total debt of $6.25

million.

Simply because the value and the amount of indebtedness of these projects changed over

a sixteen-month period is not enough, by itself, to support a reasonable belief that Mr. Malouf's

statements were false when made.[43]  Unlike the allegations regarding the value of the River

Ridge project, the changes in value and debt of the Isle de Mer and West Indies Village projects

were not so large that they support a reasonable belief that the earlier valuation must have been

false.  These changes could be the result of a significant decline in real estate values or any

number of other factors.  Accordingly, Plaintiffs have not sufficiently pleaded facts showing that

Mr. Malouf's representations regarding the value and indebtedness of these projects were false or

misleading.

Paragraph 23o: Plaintiffs' investments would be returned out of profits prior to other

distributions as a return of capital.  Plaintiffs allege the following in connection with this

statement: construction never substantially progressed; the investment proceeds were paid to

other investors; Mr. Malouf knew or should have known that there would never be any profits

from the developments; Mr. Malouf did not and could not have conveyed the Ownership

Interests to Plaintiffs; and no portion of the investments was ever actually repaid.

---

[43]"What makes many securities fraud cases more complicated is that often there is no
reason to assume that what is true at the moment plaintiff discovers it was also true at the
moment of the alleged misrepresentation, and that therefore simply because the alleged
misrepresentation conflicts with the current state of facts, the charged statement must have been
false." *Grossman*, 120 F.3d at 1124 (quoting *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1548-49
(9th Cir. 1994) (en banc)).

These facts do not sufficiently allege that the statement found in Paragraph 23o was false or misleading.  Plaintiffs in reality allege that Mr. Malouf knew there would never be any profits, rendering his repayment promise false when it was made.  When taken as a whole, the above allegations do not support a reasonable belief that this was the case.

Paragraphs 23h, 23i, and 23j: Plaintiffs would receive a 50% return on investment; construction would begin within 90 days; and financing would be available within 90 days without a personal guarantee from Plaintiffs.  Plaintiffs have properly alleged that these statements were false or misleading, but only in connection with the River Ridge project. Plaintiffs allege that the River Ridge project had never been approved by the city of Banner Elk, that no utilities were available for the River Ridge project, that none of the units for any of the projects had been pre-sold, that none of the necessary approvals were received for construction on the Isle de Mer or West Indies Village projects and that Mr. Malouf knew the developments were worth substantially less that he represented and were subject to substantially more debt than he acknowledged.  These allegations support a reasonable belief that Mr. Malouf's 50% projection was false or misleading with regard to the River Ridge project.

Plaintiffs have also properly alleged that Mr. Malouf's statement regarging construction beginning within 90 days was false or misleading.  Plaintiffs allege they were informed by the City Planner of Banner Elk that the River Ridge project was never approved by Banner Elk, no permits had ever been issued and no utilities were available to the project.  These allegations, which reveal their source and are objectively verifiable, are sufficient to support a reasonable

belief that Mr. Malouf's 90-day projection regarding the River Ridge project was false or misleading when made.

Plaintiffs have also properly alleged that the statement concerning the likelihood of obtaining construction financing for the River Ridge project within 90 days without Plaintiffs' guaranty was false or misleading.  Plaintiffs allege that the River Ridge project was substantially overvalued, that its units were not pre-sold and that utilities were unavailable to the project. These allegations support a reasonable belief that Defendants' guaranty projection was misleading when made.

The misleading statements contained in Paragraphs 23h, 23i, and 23j were also material. A reasonable investor would surely consider the projected rate of return important in deciding whether to invest.  Mr. Malouf's 50% return prediction also substantially affected the total mix of available information regarding the River Ridge project.  Defendants ask the court to find the 50% projection immaterial in light of the risk disclosures contained in the subscription agreements.  However, Mr. Malouf's projection was the only information available to Plaintiffs until the subscription agreements were received just before the investment decision was made. Whether this late disclosure is enough to remedy the allegedly misleading 50% return prediction is not properly resolved on a Rule 12(b)(6) motion to dismiss.

Similarly, the representation that construction would begin on the River Ridge project within 90 days is material because a reasonable investor would find it important in deciding whether to invest in the condominium development project.  This statement significantly altered the total mix of information available to Plaintiffs.  Mr. Malouf indicated as much in a March 29,

2005 email in which he stated that the risk associated with the River Ridge project was "limited," in part, because construction was set to begin within three months.[44]  Nothing in the Amended Complaint indicates that other information was available to Plaintiffs regarding the beginning of construction.

Finally, whether an investment would require a personal guaranty would also be important to a reasonable investor.  As shown by the March 29, 2005 email, Plaintiffs were aware that their guaranty might be necessary to obtain construction financing.[45]  But whether this renders Mr. Malouf's projection regarding the necessity of Plaintiffs' guaranty immaterial is not an appropriate Inquiry on a Rule 12(b)(6) motion.  Accordingly, Plaintiffs have properly pleaded materiality regarding the guaranty projection.

Still, none of the above analysis regarding the statements alleged in Paragraphs 23h, 23i, and 23j holds true for the Isle de Mer and West Indies Village projects.  As explained above, Plaintiffs have only summarily alleged that these projects were not pre-sold, did not have the necessary construction approvals, or were overvalued.  These conclusory allegations do not satisfy the PSLRA standard.  Accordingly, they cannot be used to show falsity of the statements alleged in Paragraphs 23h, 23i, and 23j with respect to these projects.

Paragraph 38a: Plaintiffs would receive a first-position trust deed by making the River Ridge loan.  Plaintiffs have properly alleged that this statement was false or misleading. Plaintiffs allege that Mr. Malouf offered the first-position trust deed on multiple occasions.

---

[44]Docket No. 43, Ex. B.

[45]*Id.*

Plaintiffs further allege that they did not know that at the time Mr. Malouf made the first-position representation, the River Ridge property was encumbered with five senior financial obligations totaling approximately $2.4 million.  Plaintiffs also allege that Defendants failed to sign and record the deeds until April 2006.  Defendants contend that Plaintiffs have not pleaded a false statement in Paragraph 38a because the loan amount ($926,515.03) did not fund the entire amount of money solicited ($3.5 million) in the project offering, making it impossible to retire the outstanding debt and the corresponding senior encumbrances.  But Defendants have pointed to nothing in the Amended Complaint, or the documents referred to in the Amended Complaint, that would show that Mr. Malouf's first-position promise was conditioned on raising the entire $3.5 million solicited.

The first-position representation was also material, because a reasonable investor would clearly consider it important to know whether he or she would receive a first or sixth priority in loan collateral.  Defendants point to the River Ridge project offering—which contains a title report listing four trust deeds on the property and the amount of indebtedness—claiming that Plaintiffs were aware of the senior debt.  Again, this statement relates to the reasonableness of Plaintiffs' reliance, not the materiality of the false statement.  Clearly, the promise of a first-position trust deed clearly affected the total mix of information available and was, therefore, material.

2.  Scienter

The PSLRA requires that

[i]n any private action arising under this chapter in which the plaintiff may
recover money damages only on proof that the defendant acted with a particular

21

state of mind, the complaint shall, with respect to each act or omission alleged to
violate this chapter, state with particularity facts giving rise to a *strong inference*
that the defendant acted with the required state of mind.[46]

A "strong inference" of scienter "must be more than merely 'reasonable' or 'permissible'—it

must be cogent and compelling."[47]  Whether the complaint establishes a strong inference requires

the court to "consider the complaint in its entirety, as well as other sources courts ordinarily

examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated

into the complaint by reference, and matters of which a court may take judicial notice."[48]  As

with any other Rule 12(b)(6) motion, a court must "accept all factual allegations in the complaint

as true."[49]  Accordingly, "[t]he inquiry . . . is whether *all* of the facts alleged, taken collectively,

give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in

isolation, meets that standard."[50]  "This does not mean, however, that [a court] will consider

allegations of scienter with respect to statements that fail to satisfy the first prong of the

[PSLRA]."[51]  As the analysis is inherently comparative, a court "must take into account plausible

opposing inferences."[52]  "A complaint will survive [a Rule 12(b)(6) motion] . . . only if a

---

[46]15 U.S.C. § 78u-4(b)(2) (emphasis added).

[47]*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007).

[48]*Id.* at 2509.

[49]*Id.*

[50]*Id.*

[51]*Pirraglia*, 339 F.3d at 1191.

[52]*Tellabs*, 127 S. Ct. at 2509.

reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."[53]

Having carefully reviewed the Amended Complaint in its entirety, the court concludes that it establishes a strong inference of scienter for the statements found in paragraphs 23b, 23d, 23e, 23f, 23h, 23i, 23j, and 23k concerning the River Ridge Project.  In the Amended Complaint, Plaintiffs allege that in April 2005, Mr. Malouf represented that the projects were in need of emergency funds due to "urgent circumstances."[54]  Since the River Ridge property is alleged to have been substantially overvalued and subject to multiple encumbrances, the necessary capital could not have come from the property itself.  This money was apparently needed to satisfy earlier investors, as shown by the allegation that the proceeds of Plaintiffs' investments were immediately paid to other investors.  These allegations establish a strong inference that the River Ridge project was in trouble and that Mr. Malouf needed funds to keep it afloat.  So he was strongly motivated to persuade Plaintiffs to provide the necessary money, even if it required misrepresenting important facts and circumstances.

Plaintiffs allege that none of the River Ridge units were pre-sold, despite Mr. Malouf's express representation that not only were the units pre-sold, but that down payments were on deposit in an escrow account.  Indeed, Mr. Malouf promoted the developments to Plaintiffs through his claim that risk was limited because the units were pre-sold.  Mr. Malouf told Plaintiffs that construction would begin within 90 days, even though permits had not been issued

---

[53]*Id.* at 2510.

[54]Am. Compl. ¶ 32 (Docket No. 39).

by Banner Elk[55] and no utilities were ever available to the River Ridge property.  Moreover, the

project was substantially overvalued and subject to encumbrances.  Despite all this, Mr. Malouf

represented that Plaintiffs would receive a 50% return on investment within three years.  These

allegations, when viewed together, support a strong inference that Mr. Malouf needed emergency

funds to keep the River Ridge project alive, induced Plaintiffs to invest in the project by making

a number of misrepresentations and then used the proceeds of Plaintiffs' investment to pay  other

investors,[56] despite his representation that the funds would be applied to the project.

> For these same reasons, the allegations in the Amended Complaint establish a strong
inference of scienter for the statement in paragraph 38a—that Plaintiffs would receive a first-
position trust deed by making the River Ridge loan, when in fact, five senior encumbrances
existed against the property.

> Plaintiffs have also established a strong inference of scienter concerning the allegedly
false statement in paragraph 23c—that Pensacola Holdings never owned the Isle de Mer
property.  Mr. Malouf knew that Pensacola Holdings did not own the property as demonstrated
by fact that the Isle de Mer project offering refers to the true owner of the property, Gulf
Holdings, LLP, multiple times.  Yet, Defendants sold Pensacola Holdings ownership interests to

---

[55]The court recognizes that the River Ridge project offering contains information
suggesting that permits from Banner Elk were not necessary for construction to proceed.  But
even assuming that this was the case, the project offering clearly indicates the project's
dependance on Banner Elk for utilities.  As discussed above, Plaintiffs have properly alleged that
utilities were not available to the River Ridge property based on information obtained from the
Banner Elk City Planner.

[56]The emergency need for funds combined with the immediate payment of Plaintiffs'
investment proceeds to other investors also establishes a strong inference of scienter for the
statement in Paragraph 23d as it relates to the Ilse de Mer and West Indies Village projects.

Plaintiffs, representing that it was the owner of the Ilse de Mer property.  This establishes a strong inference of fraudulent intent.

Defendants contend that this is merely a case of a "good deal gone bad" resulting from the failure to obtain construction financing.  Defendants maintain that Plaintiffs have not sufficiently alleged Mr. Malouf knew that his representations were false or materially misleading. As demonstrated above, the inference that Mr. Malouf intentionally misrepresented facts in order to induce Plaintiffs to provide the funds he needed to pay other investors is at least as compelling as any inference that Plaintiffs' case is merely one of fraud by hindsight, even if failure to obtain construction financing eventually marked the end of the project.  Accordingly, Plaintiffs have met the PSLRA pleading standard for scienter.

For the above reasons, the court will deny Defendants' Motion to Dismiss to Claims 4 and 12 to the extent they are based on the statements found in Paragraphs 23b, 23c, 23d, 23k, and 38a, and in Paragraphs 23e, 23f, 23h, 23i, and 23j insofar as they relate to the River Ridge project.  Additionally, the allegedly misleading statements and omissions found in Paragraphs 23g, 25a, 25b, 38c, 38d, and 38e will also remain as Defendants have not challenged them. Finally, for the reasons discussed above, the court will grant the Motion to Dismiss Claims 4 and 12 to the extent they are based on the statements found in Paragraphs 23a, 23l, 23m, 23n, and 23o, and in Paragraphs 23e, 23f, 23h, 23i, and 23j insofar as they relate to the Ilse de Mer and West Indies Village projects, with the understanding that evidence concerning these statements could be admissible on Plaintiffs' state securities fraud claims.[57]

---

[57]Defendants also move to dismiss Plaintiffs' claims for securities fraud under Utah and Nevada law.  Defendants have failed to present any authority or even argument for the

*C.  Breach of Contract*

Defendants argue that Plaintiffs' claims for breach of the Investment Workout Agreement are barred by the election of remedies doctrine because Plaintiffs initially elected to sue for fraud and rescission of their investments and not for breach of contract.

The doctrine of election of remedies bars a cause of action where the plaintiff has previously elected to pursue an inconsistent remedy.[58]  The doctrine is not meant "to prevent recourse to any remedy, but to prevent double redress for a single wrong.  Said doctrine presupposes a *choice* between inconsistent remedies, a knowledgeable selection of one thereof, free of fraud or imposition, and a resort to the chosen remedy evincing a purpose to forego all others."[59]  "[T]he mere bringing of an action which has been dismissed before judgment, and in which no element of estoppel or pais has arisen, that is, where no advantage has been gained or no detriment has been occasioned, is not an election."[60]

In this case, Plaintiffs have not elected their remedies merely by filing their initial complaint.  Defendants have not pointed to any prejudice that they will suffer from Plaintiffs not

---

proposition that the specific federal statutory pleading requirements of Rule 10b-5 claims apply to the state securities fraud claims.  Defendants have not briefed any other basis for dismissing Plaintiffs' state securities claims.  Accordingly, the court will deny Defendants' Motion to Dismiss Plaintiffs' claims for securities fraud under Utah and Nevada law (Claims 5, 6, 13, and 14).

[58]*Cook v. Covey-Ballard Motor Co.*, 253 P. 196, 199 (Utah 1927).

[59]*Angelos v. First Interstate Bank*, 671 P.2d 772, 778 (Utah 1983) (quoting *Royal Res., Inc. v. Gibralter Fin. Corp.*, 603 P.2d 793, 796 (Utah 1979)).

[60]*Salt Lake City v. Indus. Comm'n*, 17 P.2d 239, 242 (Utah 1932) (internal quotation marks omitted).

including the breach of contract claim in their initial complaint.  Indeed, at this early stage,

Defendants have not filed an answer, no scheduling order has been entered and no discovery has

taken place.  Accordingly, the court denies the Motion to Dismiss Claims 22 and 23.

IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss Amended Complaint [Docket No. 42] is

GRANTED IN PART AND DENIED IN PART as outlined above.

DATED September 24, 2008.

BY THE COURT:

_____
TENA CAMPBELL
Chief Judge

27